### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MACON,

# JUNE TERM, 1858.

Present—JOSEPH H LUMPKIN,
CHARLES. J. McDONALD, } Judges.
HENRY L. BENNING,

---

ABNER C. CONNER, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] The rule stated, as to the taking down of testimony in cases of felony; and the use to be made of the same.

[2.] An indictment or presentment good, although an impossible day be stated, as that on which the offence was committed. At any rate the objection comes too late after verdict.

[3.] If jurors, to constitute a panel in a criminal case, be summoned by bailiffs, it is good.

[4.] Where the witness in a criminal case, is unable from his physical condition to speak audibly, his answers, may be communicated in his presence and hearing by a sworn officer of the Court.

[5.] Although the crime of larceny may be complete as to two persons, as much so as though no other was concerned, still another may be a principal in the same offence.

[1.] It is not a good ground for the arrest of judgment in a criminal case, that the

Conner vs. The State.

time stated as the time of the offence, is subsequent to the finding of the indictment. BENNING, J.

[2.] The Sheriff may appoint the bailiffs to summon talesmen, on the trial of a criminal case. BENNING, J.

[3.] Although the indictment is founded on a presentment, it is sufficient, if the jury be empanneled on the indictment alone. BENNING, J.

[4.] If there is no substantial difference between the presentment, and the indictment, it is a matter of no consequence to the accused, which he is arraigned on. BENNING, J.

[5.] If a person from debility, is rendered unable to speak loud enough to be heard by the Court and jury, resort may be had to an interpreter. BENNING, J.

Indictment for simple larceny, in Sumter Superior Court. Tried before Judge ALLEN, March Term, 1858.

At the March Term, 1858, Abner C. Conner was put upon his trial, on an indictment for stealing a negro man slave, the property of John F. Markett.

The special presentment charged the offence to have been committed on the fifteenth day of December, 1857, and is dated September Term, 1857. The bill of indictment is dated September Term, 1857, and charges the offence to have been committed on the fifteenth day of December 1855. The defendant pleaded "not guilty."

It was in evidence from the testimony of John F. Markett that he knew the defendant during the years 1853-4-5, that he owned a boy named Seaborn in 1854, and was in possession of him in the month of December of that year. The boy disappeared the 16th of said month; he searched and advertised for him but did not find him. About the time the boy disappeared, the defendant disappeared from the county. Knew of no intimacy between defendant and the boy, but thinks defendant must have seen the boy at his (Markett's) house.

The defendant confessed to the witness, the boy was brought to him at 26th Justices Court Ground in Sumter county, by James T. Holeman, and a man by the name of Phillips, about the time the boy disappeared, and he carried him away to Selma Alabama, and was to receive two hundred dollars

Conner vs. The State.

therefor. Defendant also said he saw Jackson Tiner in Montgomery, Alabama, and the boy was then with him.

Defendant confessed, to Malta Scarborough, carrying the negro off, saying he supposed it was the general belief that he (defendant) had stolen the negro: that the negro had attempted to play him false and he took him to the bluff of Selma, and then that was the end of that damned negro. Defendant was neither drunk or sober, but drinking at the time he told this to Scarborough. He is rendered very foolish and often acts very foolish when drinking, more so than most persons. Witness Scarborough could not tell defendant's exact condition, and whether he was drunk enough to tell the truth or not.

Defendant also told James T. Holeman that he carried the negro Seaborn off, and, that after selling him two or three times he had killed him. This confession was voluntary. Defendant was drinking, but not drunk, and Holeman thinks he knew very well what he was talking about. Holeman, never saw defendant and the negro together, knew nothing of the delivery of the negro to defendant, and this was the first conversation he ever had with defendant on the subject, and he never knew of the matter until he saw the advertisement of John F. Markett in the newspaper.

Jackson Tiner testified that a few days before Christmas in 1854, he was going to Texas and saw defendant in Montgomery, Alabama, when defendant introduced him to a man from Dooly, whom he called Hicks. Hicks was a dark, rather chunky built man, appeared to weigh one hundred and fifty or one hundred and sixty pounds, seemed to have long black hair, and was about the height of Mr. McCay or a little taller. Tiner saw defendant and his companion leave in the Selma stage.

John F. Markett, again testified that the boy Seaborn was a bright mulatto, enough so to nearly pass for a white man, was about five feet ten inches high, and about one hundred and fifty or sixty pounds in weight, was a little taller than

Mr. McCay.   White men who had visited witness Markett's house, had conversed with Seaborn and thought him a white man from his color.  He had long black hair.  The jury found the defendant guilty; whereupon his counsel moved in arrest of judgment, upon the following grounds.

1st.  That the special presentment on which the bill of indictment was founded, was null and void because it charged the offence to have been committed on a day subsequent to the finding of the grand jury; that the special presentment being void, no bill of indictment could be founded thereon, upon which a trial could be had.

2d.  That the bill of indictment charges the offence to have been committed, on a different day from that alleged in the special presentment, and that said variance is fatal.

The Court overruled the motion in arrest of judgment and counsel for defendant excepted.

Defendant's counsel then moved the Court for a new trial on the following grounds:

1st.  Because the Court after objection by the prisoner, refused to set aside the array of jurors, on the ground that the array was summoned partly by bailiffs.

2d.  Because the special presentment on which the bill of indictment was found, was not presented to the jury on the demand of the prisoner, the same being made after the jury were empanneled.

3d.  Because the Court permitted testimony to be given to the jury after objection by the prisoner, the jury having been empanneled upon the bill of indictment without the special presentment.

4th.  Because the Court refused to hear testimony to show that the prisoner was arraigned on the special presentment, and not on the bill of indictment, and refused the demand o f the prisoner, that he be arraigned on the bill of indictment.

5th.  Because the Court refused the arraignment as stated in the last ground, and permitted the trial to proceed

Conner vs. The State.

after motion by the prisoner to exclude testimony from the jury, until he was arraigned upon the bill of indictment.

6th. Because the Court, after objection by the prisoner, permitted James T. Holeman, to give testimony through an interpreter, the said James T. Holeman, being unable to speak loud enough to be heard by the jury, on account of temporary weakness and debility; said testimony being communicated to the Court and jury by Col. George M. Dudley, he being called upon by the Court after the witness had communicated it to him in a whisper.

7th. Because the Court refused to have the testimony of said James T. Holeman as taken down by the clerk, read over in his hearing so that he might correct any errors in the testimony as taken down by the clerk. Witness did not demand it nor desire it. The counsel for defendant desired to read the testimony as taken down, which request was granted. The Court did not understand counsel as insisting on its being read to witness.

8th. Because the Court charged the jury, if they believed from the evidence, that defendant took and carried away the negro Seaborn, the property of Markett, from the 26th Court Ground or any other place in Sumter county, with intent to steal said negro, the defendant is guilty. That it made no difference whether others aided and assisted or not, if the defendant actually perpetrated the theft. That if Holeman and Phillips both be guilty, that does not help this defendant.

9th. Because the jury found contrary to evidence and to the weight of evidence.

The Court overruled the motion and defendant excepted. On these several exceptions error has been assigned.

W. B. GUERRY; and N. A. SMITH, for plaintiff in error.

JOHN W. EVANS; and McCAY & HAWKINS, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Overruling as we do, all the grounds in the writ of error, we deem it necessary to notice particularly a few of them only.

The first is, as to the taking down of the testimony as required by law in cases of felony. The old rule was, and we hold it to be the true practice in such cases, to read over carefully to each witness, the testimony as taken down by the amanuensis. If it be correct very well; otherwise let it be made so. If a disagreement takes place, in the course of the trial between counsel or in the jury box, let the witness be recalled if within reach—not to testify anew, but to repeat the evidence given in while under examination subject of course to the recollection of the jury. If the witness has left and cannot be recalled, then read from the written testimony as taken down : It is the next best proof, to that given by the witness on the stand. The non-observance of these directions may or may not be sufficient to require a new trial, according to the peculiar circumstances of the case—ordinarily it is not a good ground of itself.

[2.] As to the multifarious objections to the special presentment and indictment, jointly and separately, it is enough to say, they all come too late. But suppose they did not ; and moreover that it be true that an impossible day is alleged in the presentment, as the time when the offence was committed. Have not all the Courts both in England and in this country, settled it so long ago, that the memory of man runneth not to the contrary, that while some day must be stated, any other may be proven ? Who does not see, that if it be immaterial to prove the day as charged, that no day or an impossible day will do just as well ?

But it will be replied, that it never was decided, but that the time charged must be before the accusation is preferred. And I concede this to be so, at least for the purposes of the argument. But let us look at the reason of the thing. Suppose

Conner vs. The State,

the day be laid subsequent to the finding of the grand jury; it is the same in effect as stating an impossible day, as the fortieth of May, and if it be correct that any day within the statute of limitations and before indictment found will suffice, it is quite clear that no day, or one that is impossible, will do just as well.    But we fall back upon the position that this and all kindred objections came too late.

[3.] As to the objection, that the panel of jurors, were summoned partly by bailiffs, the record discloses no facts touching this point except what appears in the motion for a new trial, which was disallowed by the Court.    It is true that the law requires that jurors shall be summoned by the Sheriff or his deputy; and if the Sheriff be interested then by the coroner or some other person appointed by the Court. If the bailiffs in this case acted, under the authority of the Sheriff, they were his deputies *pro hac vice*.

[4th.] If the witness, *James T. Holeman* was unable from his physical condition to speak loud enough to be heard by the Court and jury, there can be no reason why his answers should not be communicated by Col. Dudley, an attorney of the Court, in the presence and hearing of the witness.

[5.] The Court charged the jury that if they believed from the evidence the defendant took and carried away the negro, Seaborn, the property of Markett, from the 26th Court Ground, or any other place in Sumter county, with intent to steal said negro, the defendant is guilty, that it made no difference whether others aided and assisted or not, if the defendant actually perpetrated the theft ; that if Holeman and Phillips, both be guilty, that does not help this defendant.

It is objected to this charge, that it is inapplicable to the the case, and calculated to mislead the jury.    The point taken by the prisoner being, that if the jury believe the crime to have been committed and completed by others before the property was received by the prisoner, then he was only an accessory.

We have examined the testimony carefully and think the

Court was fully justified in giving the charge which it did: The counsel for the accused had the right to insist upon his view of the law as applicable to the evidence. And for any thing that appears he was·permitted to do so. All he complains of is, that the proposition laid down by the Court, the soundness of which is not and cannot be controverted, was calculated to withdraw the mind of the jury from the defence which he set up for the protection of his client. To my mind it is clear that both positions can stand together. The crime may have been completed as to Holeman and Phillips when they carried off the negro, from the custody of his owner, and still Conner have been a principal. If his account of the transaction can be relied on, such was the truth of this case. Be this as it may, the Court charged nothing that was not law; and law, too, applicable to the facts proven.

If the confessions of the defendant be true, he not only stole the negro, but afterwards drowned him. He is not only guilty of larceny, but of murder also.

Judgment affirmed.

BENNING J. concurring.

Abner Conner was indicted for simple larceny in stealing a negro, and was found guilty. The indictment was founded on a presentment. After verdict a motion was made by him in arrest of judgment. This motion was put on two grounds; 1st, that the presentment "charged the offence to have been committed on a day subsequent to the finding of the grand jury." 2d, " that the bill of indictment charges the offence to have been committed on a different day from that alleged in the special presentment."

The Court overruled the motion.

I think the Court did right.

[1.] The allegation of time in indictments is, in general, immaterial. The time when an offence is committed cannot, in general, be a matter affecting the real merits of the

offence; " and no motion in arrest of judgment shall be sustained for any matter not affecting the real merits of the offence charged in such indictment." 2 *Sec.* 14 *Div. Pen. Code.*

This motion having been overruled, Conner moved for a new trial, which motion was also overruled.

The first ground of the latter motion was, that " the Court after objection by the prisoner, refused to set aside the array of jurors on the ground that the array was summoned partly by bailiffs."

[2.] It is to be presumed, that these bailiffs acted at the instance of the Sheriff; that is, that they were his special deputies. " And the said Sheriffs" " shall have power," " to appoint, as there shall be occasion, one or more deputies." 46, *Sec., Jud. Act of* 1799.

I think that there was nothing in this ground.

The second ground was, that the presentment " was not presented to the jury on the demand of the prisoner, the same being made after the jury was empannelled."

Of what service could the presentment have been to the jury? The variance between the presentment and the indictment as to the time, was not a matter to acquit on. The finding ought not to have been affected by the presentment, if the jury had seen the presentment.

I see nothing then in this ground.

The third ground was, that " the Court permitted testimony to be given to the jury, after objection by the prisoner, the the jury having been empannelled upon the bill of indictment without the the special presentment."

[3.] I think, that empannelling the jury upon the indictment was quite sufficient; I do not know of any law requiring the empannelling to be, on both the indictment and the presentment, in cases founded on presentment.

The fourth ground was, " that the Court refused to hear testimony to show that the prisoner was arraigned on the special presentment, and not on the bill of indictment; and

refused the demand of the prisoner, that he be arraigned on the bill of indictment."

The fifth ground was, that " the Court refused the arraignment as stated in the last ground, and permitted the trial to proceed after motion by the prisoner to· exclude testimony from the jury until he was arraigned upon the bill of indictment."

[4.] I dispose of both of these two grounds in a word. There was no substantial difference between the presentment and the indictment. The variance in the allegation of time, was not a matter of substance. Consequently, it made not the least practical difference to the prisoner, whether he was arraigned on the one or on the other.

The sixth ground was, that " the Court, after objection by the prisoner, permitted James T. Holeman to give testimony through an interpreter, the said James T. Holeman being unable to speak loud enough to be heard by the jury, on account of temporary weakness and debility—said testimony being communicated to the Court and jury by Col. George M. Dudley, he being called upon by the Court, after the witness had communicated it to him in a whisper."

If this ground be good, then the testimony of all persons speaking a strange language as well as of all persons who are mutes, is to be excluded. But we know, that the testimony of these persons, is not to be excluded. That is admitted.

I think that there is nothing in the ground

The seventh ground was, I believe, abandoned.

The eighth ground was, " that the Court charged the jury, that if they believed from the evidence, the defendant took and carried away the negro, Seaborn, the property of Markett, from the 26th Court ground, or any other place in Sumter county, with intent to steal said negro, the defendant is guilty. That it made no difference whether others aided and assisted or not, if the defendant actually perpetrated the

theft. That if Holeman and Philips both be guilty, that does not help this defendant."

I can see no fault in this charge. Indeed, I believe, that this ground was also abandoned.

The ninth and last ground was, that " the jury found contrary to the evidence, and contrary to the weight of evidence."

I think they did not. I think they had an abundance of evidence to warrant their verdict.

The result is, that I think the Court below also did right, in overruling the motion for a new trial.


McDonald, J., dissenting.

The plaintiff in error was indicted for simple larceny, and was convicted. He moved in arrest of judgment, and for a new trial. The presiding Judge in the Court below refused both motions, and the defendant below excepted. One of the grounds incorporated in one of the said motions was predicated on the following state of facts :

The plaintiff in error was presented for the offence by the grand jury, who charged it to have been committed in the year 1857. On this presentment the Solicitor General arraigned the prisoner, who pleaded not guilty. Afterwards the Solicitor General made out an indictment, charging the offence to have been committed in the year *one thousand eight hundred and fifty-five,* and transferred to it, without the consent of the prisoner or his counsel, the arraignment and plea made on the presentment, and refused to arraign the defendant on the indictment thus made out.

There was certainly no issue made up, in fact, between the State of Georgia and the prisoner on the indictment on which he was put on his trial. The Solicitor General had transferred and put on it an arraignment made on another accusation of the grand jury. It was not identical, for the offences are charged to have been committed in different

years. It is said, that though a day and year must be alleged in every indictment, time is not material. It is true that the Solicitor General may generally prove a day different from that laid in the indictment, but still "the time must be stated with such certainty, that no doubt can be entertained as to the period really intended." 1 *Chitty's Cr. Law* 218. It is therefore bad "to state the crime to be committed on the feast of St. Peter, because there are two feasts of that name, and both have additions to distinguish them. *Ib.* If the grand jury in England had charged a crime to have been committed on one of these feasts, could the attorney for the crown make out an indictment thereon, and insert the other, provided the statute law of that country was like our own?

The prisoner not having been arraigned on the indictment, he was deprived of a most important legal right, that of demurring to the indictment, pleading to the jurisdiction of the Court, in abatement, or of filing a special plea in bar. It certainly, according to my judgment, would have been a good plea that no accusation had ever been made against him by the grand jury, for the offence charged in the bill of indictment. Before the contrary can be held, it must be maintained, that if the attorney for the State have two indictments against the same prisoner for horse stealing, both found by the grand jury at the same term of the Court, one for stealing a horse in 1855 and the other for stealing a horse in 1857, he may sustain the latter by proof of the stealing in 1855, and the former by proof of the stealing in 1857. If an innocent person were thus accused, such a proceeding would be most oppressive, and might lead to his unjust conviction.

The grand jury in this case, accused the prisoner with having committed the offence in 1857. He was arraigned, and pleaded not guilty to the accusation, and when put on his trial, he finds himself charged by the Solicitor General with having committed an offence two years before, in re-

spect to which there is no accusation of the grand jury, and to which he had never pleaded.

I cannot give my sanction to the proceeding, and think the judgment of the Court below ought to be reversed.